# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JORGE SANTIAGO-MARRERO, ET AL.,

 Plaintiffs,

 v.

BERNARDO VAZQUEZ, ET AL.,

 Defendants.

**Civil No. 12-1294 (SEC)**

## OPINION AND ORDER

Before the Court are the defendants' motions to dismiss (Dockets # 18 and 20) and the plaintiffs' oppositions thereto (Dockets # 22 and 30).  After reviewing the filings and the applicable law, the defendants' motions are **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**[1]

Jorge Santiago-Marrero, his wife, and their conjugal partnership (collectively, "Plaintiffs") filed this suit under § 1983 claiming violations of the First and Fourteenth Amendments of the United States Constitution, as well as under the laws of the Commonwealth of Puerto Rico. Docket # 1, ¶ 18.  The relevant facts, as averred in the complaint, follow.

From September 4, 2001 to April 14, 2003, Santiago-Marrero worked as a contract employee at the Puerto Rico Ports Authority ("Ports Authority"). Id. ¶¶ 5 and 25.  Santiago-Marrero was an activist of the Popular Democratic Party ("PDP"), a fact widely known by

---

[1] Alberto Escudero-Morales was a co-defendant in the case at hand.  However, on August 24, 2012, the Court issued a partial judgment dismissing all claims against him for want of prosecution.  See Dockets # 27, 28, 31, and 32.

his supervisors and coworkers at the Ponce, Aguadilla, Mayaguez, Arecibo and San Juan airports. Id. ¶¶ 2 and 49. He did well through the years and became a career employee, occupying the position of "Itinerant Regional Airport Manager". Id. ¶¶ 5 and 25.

Things changed in January 2009, after the Puerto Rico's general elections, in which the New Progressive Party ("NPP") took control of the Commonwealth's government. The newly elected governor named Alvaro Pilar-Villagran as Executive Director of the Ports Authority. Id. ¶ 20. Plaintiffs allege that upon Pilar taking office and until the filing of this complaint, Santiago-Marrero was harassed and discriminated against due to his political affiliation to the PDP. Id. ¶ 18. They further aver that Santiago-Marrero was transferred three times, without written advanced notice and without being advised of his right to contest the decision. Id. ¶ 47; see also id. ¶ 53.

During his tenure as Executive Director, Pilar ordered to find out which employees were members of the PDP, and worked together with defendant Arnaldo Deleo-Martins, an active member of the NPP and the General Manager of the Luis Muñoz Marín International Airport ("LMM Airport") and the regional airports, to actually or constructively discharge Santiago-Marrero. Id. ¶ ¶ 11, 27 and 52. At the time, Santiago-Marrero was working at the Mayaguez Airport under the supervision of Deleo. Id. ¶ 27. Santiago-Marrero alleges that immediately after Pilar learned about his PDP affiliation, Pilar transferred him to the Aguadilla Airport. Id. ¶ 53. Santiago-Marrero also avers that, although he had applied for a position at the Ponce Airport, the position was instead given to a less experienced employee and NPP activist. Id. ¶ 55.

On another occasion, Bernardo Vázquez, Deputy Director of the Ports Authority from August 2010 to October 2011, allegedly went to the Aguadilla Airport and requested Edwin Sánchez and another NPP affiliated employee to instigate employees to make complaints against Santiago-Marrero.  Id. ¶ 88.  Later, Sánchez told Santiago-Marrero that Vázquez was trying to find a reason to fire him. Id. ¶ 90.  Since no valid reason was found to terminate him, Santiago-Marrero was transferred again in May 2011 to the LMM Airport. Id. ¶ ¶ 63-64 and 91.

After the transfer, Deleo placed Santiago-Marrero in an isolated office that was used as a storage room requiring him to perform duties of an assistant, a position inferior to the post that he held. Id. ¶ 64. In other occasions, Deleo assigned him no work, even though he was allegedly transferred due to "service needs", and despite the fact that four regional airports were operating without managers –positions that were later filled in by NPP affiliates. Id. ¶ 65.  He was also not allowed to collect mileage and per diem allowance, benefits that were given to other employees affiliated to the NPP. Id.

Finally, in October 2011, Vázquez was appointed as Executive Director, and Santiago-Marrero was transferred for the third time to the Arecibo Airport.  Id. ¶¶ 40-47 and 85. This suit followed.

### Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).  In evaluating whether the plaintiffs are entitled to relief, the court must accept as true all "well pleaded facts [and indulge] all reasonable inferences" in their

favor. Bell Alt. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Nevertheless, even under the

liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has held

that to survive a motion to dismiss a complaint must allege "enough facts to state a claim to

relief that is plausible on its face. Id. at  570. Although complaints need not contain detailed

factual allegations, and the plausibility standard is not akin to a "probability requirement," it

still asks for more than a sheer possibility that a defendant has acted unlawfully. Id. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court reaffirmed Twombly

and clarified that two underlying principles must guide a court's assessment of the adequacy

of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First,

a court must identify any conclusory allegations in the complaint, as such allegations are not

entitled to an assumption of truth. Id. at 677. That is to say, courts must disregard "rote

repetition of statutory language," McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217

(1st Cir. 2012), as "threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 677 (citing Twombly, 550

U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011)

("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so

threadbare or speculative that they fail to cross the line between the conclusory to the

factual."). Put another way, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of

allegations that merely parrot the elements of the cause of action." Ocasio-Hernández v.

Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556

U.S. at 670. A claim has facial plausibility when the pleaded facts allow the court to

reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 677, 682. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 677. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 678. Because "the response to Twombly and Iqbal is still a work in progress," Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012), however, the First Circuit has cautioned that "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where . . . . 'some of the information needed may be in the control of [the] defendants.'" Id. (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)).

The aforementioned requirements complement a bedrock principle: a complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernández, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). So, while a complaint must be supported by facts and not mere generalities, "only enough facts to make the claim plausible" are required. Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012). "The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial." Id. Accordingly, even after Twombly and Iqbal, "[d]ismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández, 640 F.3d at 11.

### Applicable Law and Analysis

As a preliminary matter, the Court considers the defendants' argument that Santiago-Marrero's wife, Maribel Capestany-Gómez, lacks standing to sue under 42 U.S.C.A. § 1983 and Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146 et seq. Docket # 18, p. 11-13. In their opposition, however, Plaintiffs clarified that Capestany-Gómez's claim was premised only on Article 1802 of the Puerto Rico Civil Code. Docket # 22, p. 15. "[U]nlike an action brought under Section 1983, a spouse and conjugal partnership may have standing under Article 1802 … even if they were not the subject of the alleged underlying unlawful conduct." Cotto v. Municipality of Aibonito, No. 10-2241, 2012 WL 1110177, at * 19 (D.P.R. April 2, 2012) (citing Rodríguez-Rios v. Cordero, 138 F.3d 22, 23 (1st Cir. 1998)). Also, "an employee's spouse and conjugal partnership formed between them do not have standing to assert a claim under Law 100." Cotto, 2012 WL 1110177, at *18 (citing Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994)). Therefore, Capestany-Gómez and the conjugal partnership's claims under § 1983 and Puerto Rico Law 100 are hereby **DISMISSED with prejudice**. The supplemental claim under Article 1802, however, remains.

*First Amendment Political Discrimination Claim*

It goes without saying that political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has remarked: "The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First

Amendment." Carrasquillo v. P.R. ex rel. Justice Dep't, 494 F.3d 1, 4 (1st Cir. 2007). "[T]he First Amendment protects associational rights … [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; see also Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)). This protection extends to career employees, transitory employees, and independent contractors. Martínez-Baez v. Rey-Hernández, 394 F.Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)).

An actionable claim of political discrimination consists of the following four elements: (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's opossing political affiliation; (3) that there is an adverse employment action; and (4) that political affiliation was a substantial or motivating factor for the adverse employment action. Ocasio-Hernández, 640 F.3d at 13.

The defendants' motion is mostly filled with summaries of decisions from district and circuit courts without providing specific arguments against Plaintiff's political discrimination claim. Because the defendants failed to elaborate on this argument, the Court deems it waived. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). In any event, Plaintiffs have sufficiently alleged the necessary elements for an actionable claim of political discrimination. The Court dispatches this matter quickly.

### A.  The parties belong to opposing political affiliations

Plaintiffs state that Santiago-Marrero belongs to the PDP and that Deleo and Váquez belong to the opposing NPP.  These allegations, taken as true for purposes of this motion, are sufficient at this stage.  See Ocasio-Hernández, 640 F.3d at 13.

### B.  The defendant's knowledge of Santiago-Marrero's political affiliation

At the motion to dismiss stage, the plaintiff need only plead facts "to support a reasonable inference that the … defendants had knowledge of their political beliefs." Ocasio-Hernández, 640 F.3d at 15.  "The Court must take into account the 'cumulative effect of the factual allegations." Cotto, 2012 WL 1110177, at *7.

Plaintiffs allege that in 2002, Santiago-Marrero was sued by an NPP activist, José A. Riollano, for alleged political discrimination, and thus his affiliation to the PDP was well known at the Ports Authority; and that Pilar ordered to find out which employees were members of the PDP and that he, along with Deleo and Vázquez, intended to actually or constructively discharge Santiago-Marrero. Accepting as true these well pleaded facts, and drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient at this stage to establish that defendants Deleo and Vázquez were aware of Santiago-Marrero's affiliation to the PDP.

### C.  Adverse employment action

It is firmly established that the First Amendment's protection against political discrimination also extends to adverse employment actions, such as "promotions, transfers, and recalls after layoffs based on political affiliations or support…" Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990); Rodríguez-García v. Miranda-Marín, 610 F.3d

756, 767 (1st Cir. 2010).   Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue.  Carrasquillo, 494 F.3d at 4; Rodríguez-García, 610 F.3d at 767.

Plaintiffs allege that Santiago-Marrero was assigned duties of an assistant, a position that is inferior to that which he occupied; that he was placed in an isolated office that was used as a storage room; that he was treated differently than NPP employees, since he was not allowed to collect mileage and per diem allowance; and that he was transferred three times without a reason and without his consent.  Based on these allegations, Plaintiffs have sufficiently pleaded that Santiago-Marero was subjected to adverse employment actions by the defendants.

### D.  Political affiliation as a substantial or motivating factor

A plausible discrimination claim "requires a reasonable inference that the plaintiffs' political affiliation was a substantial or motivating factor in the defendants' conduct." Ocasio Hernández, 640 F.3d at 16.  Moreover, each defendant's role in the adverse decision must be sufficiently alleged to make him or her a plausible defendant. Id.  The First Circuit has further stated that at the motion to dismiss stage, temporal proximity between the change in political administration and the turnover of staff unquestionably contributes to the reasonable inference that the employment decision was politically motivated. Ocasio Hernández, 640 F.3d at 18.

In the case at hand, Plaintiffs' allegations began after the newly elected governor named Pilar as Executive Director of the Ports Authority.  This, coupled with allegations

that Santiago-Marrero was treated differently than NPP affiliated employees, and was being investigated by Vázquez and other NPP employees, is sufficient to reasonably infer at this stage that political affiliation was a motivating factor in the adverse decisions taken by the defendants.

Therefore, at this stage, Plaintiffs have sufficiently plead a claim for political discrimination under the First Amendment.  The defendants' request is thus **DENIED**.

*The Qualified Immunity Defense*

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials.  Whitfield v. Meléndez-Rivera, 431 F.3d 2, 6 (1st Cir. 2005).  It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987).  In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test.  Maldonado v. Fontanez, 568 F.3d 263, 268-9 (1st Cir. 2009). That is, a "court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. The second step of the qualified immunity analysis, in turn, has two aspects. One aspect focuses on the clarity of the law at the time of the alleged civil rights violation, and the other focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Id. at 269.

Here, the Court already established that Plaintiffs' complaint sufficiently pleaded

claims under the First Amendment to the U.S. Constitution.  The inquiry now turns on whether the right was clearly established at the time of the alleged violation.  Defendants only allege that "[t]he record clearly shows that the employment decisions that plaintiff challenges were not only lawful but were also employment decisions related to plaintiff's role by his employer." Docket # 20, p. 10. The defendants, however, do not argue or show that the alleged violation of Santiago-Marrero's constitutional right was not "clearly established" at the time.  Once again, defendants' contention is not properly developed, as their motion is mostly filled with summaries of decisions from district and circuit courts without providing specific arguments in support of their position.  They simply claim, in a conclusory fashion, that no constitutional violation occurred. Accordingly, the qualified immunity defense fails at this stage. If appropriate, the defendants may restate this defense at a later stage.  The defendants' request is therefore **DENIED**.

*Fourteenth Amendment Due Process Claim*

The defendants aver that Plaintiffs have failed to adequately allege the deprivation of a property interest sufficient to invoke the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  Docket # 18, p. 7-9.  The Court agrees with this contention.

In order "to establish a procedural due process claim under § 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. P.R. Ports Authority, 515 F.3d 20, 29 (1st Cir. 2008).  Because Santiago-Marrero was not terminated from his position with the Puerto Rico Ports Authority, he cannot validly claim a

deprivation of a proprietary interest. See Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) ("Under Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform.") (internal citations omitted). Thus, Defendants' request for dismissal at this stage is hereby **GRANTED**.

*The Statute of Limitations Challenge*

The defendants also argue that Plaintiffs' § 1983 and supplemental jurisdiction claims prior to May 2, 2011 are time barred. Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989)).

Section 1983 does not contain a limitations period. Therefore, the courts must borrow the state's statute of limitations for personal injury actions. Santana-Castro v. Toledo-Davila, 579 F.3d 109, 114 (1st Cir. 2009). In Puerto Rico the prescriptive period governing tort actions is one year. Id. Events prior to this date, however, could be timely if the plaintiffs can demonstrate a continuing violation. Fernandez-Sierra v. Municipality of Vega Baja, No. 11-1172, 2011 WL 5335321, at *4 (D.P.R. Nov. 4, 2011); see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002). A review of the allegations in the complaint reveals that some of the discrete acts occurred within one year of the filing of the complaint. The allegations are insufficient to conclude whether they are part of a continuing violation. Hence, it is premature to entertain this issue at this stage. The defendants' request for dismissal on this issue is therefore **DENIED.**

*Claims against the Conjugal Partnerships*

The defendants aver that since unnamed spouses-defendants and the conjugal partnerships were not involved in the facts alleged in the complaint, the Court must dismiss the claims against them. The defendants neither cite case law nor provide a developed discussion supporting this contention. However, as explained in Mercado-Vega v. Martínez, 666 F. Supp. 3 (D.P.R. 1986), Puerto Rico law requires that codefendant-wives, as administrators of the conjugal partnership, and the conjugal partnership be made necessary parties to any action which might detrimentally affect their interest in the community property. Id. (citing Lugo-Montalvo v. González-Manon, 104 P.R. Dec. 372 (1975); Alicea-Alvarez v. Valle-Bello, Inc., 111 D.P.R. 847 (1982)). Therefore, as in Mercado-Vega, the Court finds that Plaintiffs correctly included the wives of the defendants and their conjugal partnerships as parties to the present case. Accordingly, the defendants' request is hereby **DENIED**.

*Exhaustion of Administrative Remedies*

Since the exhaustion of state administrative remedies is not required in order to bring an action under § 1983, Patsy v. Board of Regents of State of Fla, 457 U.S. 496 (1982), the defendants' request is **DENIED**.

*Supplemental Jurisdiction Claims*

Because the defendants' plea for the dismissal of the Plaintiffs' state-law claims assumes the dismissal of all of their federal-law claims, the Court need not address this argument at this juncture.

**Conclusion**

For the foregoing reasons, Plaintiffs' Fourteenth Amendment claim, and Capestany-Gómez and the conjugal partnership's claims under § 1983 and Puerto Rico Law 100 are **DISMISSED with prejudice**. The defendants' motion to dismiss is **DENIED** as to all other claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of February, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge